## STATE v. SEABOARD AIR LINE RAILWAY.

(Filed 11 December, 1907).

**Instructions—Power of Court—Opinion.**

It was error for the Court below, in instructing the jury, to charge, "if they believed the evidence they would return a verdict of guilty," such being an expression by the Court prohibited by Revisal, sec. 535. The proper manner is to instruct them, "if they find from the evidence" a certain fact or facts to be true, then the defendant is guilty or not, as the case may be.

CLARK, C. J., dissenting *arguendo.*

INDICTMENT for running freight train on Sunday, tried at August Term, 1907, of FRANKLIN Superior Court, before *Neal, J.,* and a jury.

Verdict of guilty. Defendant appealed.

*Assistant Attorney-General Clement* for the State.
*Day, Bell & Allen* and *T. W. Bickett* for defendant.

BROWN, J.    The Court instructed the jury that, if they
believed the evidence, they would return a verdict of guilty.
To this instruction the defendant excepted, and we think the
exception is well taken.    Section 535 of the Revisal provides
that "No judge, in giving a charge to the petit jury, either
in a civil or a criminal action, shall give an opinion whether
a fact is fully or sufficiently proven, such matter being the
true office and province of the jury; but he shall state in a
plain and correct manner the evidence given in the case and
declare and explain the law arising thereon."    This section
of the Revisal has been on the statute books of this State since
the year 1796 (Code, sec. 413), and has often been construed
by this Court in relation to just such a charge as was given in
this case.    In State v. Matthews, 78 N. C., 537, Rodman, J.,
speaking of the duty of a judge in charging the jury in a
criminal case, says: "We think he is required, in the interest
of human life and liberty, to state clearly and distinctly the
particular issues arising on the evidence, and on which the
jury are to pass, and to instruct them as to the law applicable
to every state of the facts which, upon the evidence, they may
reasonably find to be the true one.    To do otherwise is to fail
to declare and explain the law arising on the evidence, as by
the act of Assembly he is required to do."    In State v. Mooney,
61 N. C., 435, Judge Reade says: "His Honor's charge,
'that in any view of the case the defendant was guilty,' is so
broad as to entitle the defendant to a new trial, if there is any
view consistent with his innocence."    Judge Henderson says,
in Bank v. Pugh, 8 N. C., at page 206: "The jury are the con-
stitutional judges, not only of the truth of the testimony, but
of the conclusions of fact resulting therefrom."    In consider-
ing a charge similar to that given in this case, Mr. Justice
Walker well says: "The evidence may, in the opinion of the
Court, have been ever so strong against the defendant, yet it
was for the jury to find the ultimate fact of guilt, without any
suggestion from the Court, direct or indirect, as to what the

finding should be. The presumption of innocence and the doctrine of reasonable doubt require that method to be pursued, and it is clearly enjoined by the statute we have cited (Code, sec. 413), the restraining words of which define clearly the respective functions of Court and jury in the trial of causes." *State v. Simmons,* 143 N. C., at page 619.

The expression "if the jury believe the evidence" has been often condemned by this Court, and we have repeatedly held that the proper way to instruct the jury is that, *if they find from the evidence* a certain fact or facts to be true, then the defendant is guilty, or not guilty, as the case may be. *Sossaman v. Crews,* 133 N. C., 470; *Wilkie v. Railroad,* 127 N. C., 203; *State v. Barrett,* 123 N. C., 753. In *State v. Green,* 134 N. C., 658, the Court instructed the jury that, if they believed the evidence, they should convict the defendant. A new trial was granted for error in this charge, and *Judge Connor* says: "Section 413 of The Code prescribes the duty of the Judge in charging the jury: 'He shall state in a plain and correct manner the evidence given in the case, and declare and explain the law arising thereon.' We feel sure that the error of the learned and careful Judge who tried this case was an inadvertence. The testimony strongly tended to show the defendant's guilt, and doubtless so impressed his Honor. In the administration of the criminal law it is wise to observe the 'landmarks' and preserve the well-defined rights and duties of the Court and jury."

The evidence in the case before us is indefinite and uncertain, and the facts to be found therefrom and the inferences to be drawn were matters peculiarly within the province of the jury. If there was any phase of the evidence from which the jury might infer that the defendant was not guilty, the defendant was entitled to go to the jury on it. *State v. Lilly,* 116 N. C., 1050.

New Trial.

CLARK, C. J., dissenting: When the intent is an essential ingredient of an offense, then it is error to charge the jury "If you believe the evidence you will find the defendant guilty," for the jury, not the Court, must draw the inference of intent.    To this class of cases belongs every case cited by the Court.

But when, as here, the doing the act condemned by the statute (Revisal, sec. 3844) makes the offense, then, if, as here, the evidence is plain and uncontradicted that the defendant willfully did that act, the Court can properly discharge its duty to "apply the law to the facts" only by instructing the jury, as his Honor did here, "If you believe the evidence, the defendant is guilty."    There is nothing else he could say. This distinction is drawn in *State v. Railway,* 122 N. C., 1061 (the "free-pass" indictment), with citation of numerous authorities, where the Court said: "This has been settled law for a long time."

We have a case *exactly in point* and for this *same offense,* the facts being as here.    The Judge there charged, as *Judge Neal* has charged here, that "If the jury believe the testimony, the defendant is guilty."    The defendant excepted, but this Court unanimously affirmed the judgment.    *State v. Railroad,* 119 N. C., 821.    There is no reason shown to overrule that case.    From immemorial time, in our State, in the other States of the Union and in England, such instructions have been sustained where the evidence is uncontradicted and no inference of intent has to be drawn as an element of the offense.    Our Reports show numbers of cases affirmed on exactly such instruction by the Judge, among them the very last case, *State v. Walker, ante,* 567.

The act of 1879, chs. 97, 203, amended 1897, ch. 126, now Revisal, sec. 3844, provides: "If any railroad company * * * shall permit any car, train of cars or locomotive to be run on Sunday on any railroad, except such as may be run for the purpose of transporting the United States mails and passengers with their baggage, and ordinary express

freight in an express car exclusively, and such as may be
run by law, such railroad company shall be guilty of a mis-
demeanor in each county in which any such car, train of
cars or locomotive shall run," with a proviso that "Sunday"
shall embrace only from sunrise to sunset, and that freight
trains *in transitu* which have started on Saturday may be
run not later than 9 o'clock A. M. on Sunday, but only for
the purpose of reaching the terminus or shops.    If running
a train for carrying live stock, etc., under Revisal, sec. 2613,
can be construed as an exception to this statute, that is purely
a matter of defense, and there was no evidence to that effect.

The statute is plain, clear, explicit.    The indictment fol-
lowed the statute.    The State could not be required to charge
more facts than the law making the offense prescribed as con-
stituting it.    The evidence, if believed—and the jury have
said they did believe it—proved conclusively, and it was not
contradicted, every fact prescribed by the statute and charged
in the indictment.    W. J. Ballard, living at Franklinton,
N. C., testified that, at 2:30 P. M. on Sunday, last year, he
saw No. 41, a freight train, pass that place; that he noticed
all the cars; there were eighteen cars, empty, and all the doors
open; train was going north; that another freight train passed
about the same time, also going north; this train contained
fifteen empties, five cars of lumber and a car of pig iron; all
doors open; that the doors of the first train were wide open;
that he looked in the cars of the first train (eighteen empty
cars) and could see in one end as they passed, but not in the
other; that the second train, which stopped at Franklinton for
another train to pass it, was composed of fifteen "empties,"
five cars of lumber and a car of pig iron; that he examined
that train, and there was nothing on it except the lumber and
pig iron, as above described; the doors were standing wide
open; that this was between first of May and last of July of
last year.

There is nothing doubtful or uncertain about this evidence. If Mr. Ballard swore to the truth, no other conclusion could be possibly drawn but that on a certain Sunday, about 2:30 in the afternoon, in May, June or July, last year, and therefore within two years, the defendant did run "a car, train of cars or locomotive" on its road, which was "not run for the purpose of transporting the United States mails and passengers and express car." That is the offense which is prescribed in Revisal, sec. 3844, and charged in the indictment. If there was any matter of defense, outside that section, the burden was on the defendant to prove it, and it did not. *State v. Long,* 143 N. C., 676; *State v. Railroad,* 119 N. C., 814. The whole case turned upon whether the state of facts which the witness Ballard described was true or not, for, if true, it was the identical state of facts, *verbatim,* which the law-making body decreed (Revisal, sec. 3844) should be a misdemeanor. Necessarily, therefore, "if the jury believed the evidence," the defendant was guilty.

In the "free-pass" case (*State v. Railroad,* 122 N. C., 1070) attention was called to the fact that that was the first indictment against a railroad company for violation of the law against issuing free passes, though the law had been enacted seven years previously. But the statute now before us was enacted in 1879—now nearly twenty-nine years ago—and it may well be doubted (if it is, indeed, a subject of any doubt) whether a single Sabbath day in all those years has passed in which this statute has not been openly and notoriously violated in North Carolina. Yet only once before has an indictment for its violation been presented here (*State v. Railroad,* 119 N. C., 814) for review. The law was passed to insure rest from 9 A. M. to sunset on the Sabbath day for a most deserving and hard-working body of men, who daily and almost hourly risk their lives. They have had no powerful lobby to represent them before the Legislature, and this small enactment in their favor has not been enforced. . It is

to the public interest that they should have this short weekly cessation of work (only about one-third of that allowed by the Mosaic Dispensation), not only for their own benefit and the benefit of those dependent upon their continuance in life and health, but also for the benefit of the public at large, whose lives and limbs are put in jeopardy when railroad operatives on any train which may collide with a passenger train are worked 365 days a year, with no Sabbath interval of rest, which is accorded for twenty-four hours to other vocations of men.    It has been expressly held that the Legislature had the power to pass the act.    *State v. Railroad,* 119 N. C., 894. If (as the Judge charged) the witness Ballard swore the truth, the law has been violated.    Why should this defendant not pay the fine prescribed by law for this act?

The railroad corporations are officered by educated, intelligent men.    In *State v. Railway,* 122 N. C., 1063, *Montgomery, J.,* says: "It is not too much to say in a judicial opinion that the defendant is represented in its legal department by many of the best equipped lawyers in the country, and it would be a most violent presumption to say, or even to think, that they were not thoroughly posted as to the laws, State and Federal, concerning the interests and liabilities of their clients."    The railroads are not only not poor and ignorant, but, of all, they are most beholden to respect and obey the law.    They are beneficiaries of the State.    Their reports, published as official records by the State, and of which hence we have often taken judicial notice, show that they collected from the people of North Carolina last year $28,000,000, of which more than $9,000,000 was net profit.    In all their immense work in gathering up this profit and these receipts, and over every foot of their extensive properties, and as to every dollar of their holdings, they are guarded and protected by the might and majesty of our law, maintained and executed at the cost of the public.    They are safe behind the terrors of the law, whose weight will be surely and un-

erringly felt by whoever shall dare to violate that protection. Yet, when for the second time only in the more than twenty-eight years elapsed since the passage of this law for the protection of railroad employees, an indictment for its violation is presented in this Court, when the uncontradicted evidence, if believed, makes the defendant guilty of the very ·act prescribed by the statute, and the Judge so tells the jury, and it cannot be denied that such is the law, it is argued to us that there is reversible error because the Judge said: "If you believe the evidence," instead of "If you believe *from* the evidence," that the defendant did the act described by the witness, *i. e.,* run a freight train on a Sunday afternoon.

None of these cases cited by the Court condemns the phrase here used by the Judge, which has been sanctioned by immemorial usage.    In all of them the emphasis is on "evidence," not on "from."    In *State v. Barrett,* 123 N. C., 753, the Court criticised, in a case of larceny involving intent, the expression, "If you believe such facts," on the ground that the jury might believe such to be facts otherwise than from the evidence (as from their own knowledge, for instance), and, therefore, they should be told "if they found such facts from the evidence," etc.    This does not apply here, where the Judge told the jury "if they believed the *evidence.*"    *Willkie v. Railroad,* 127 N. C., 213, repeats what is said in *State v. Barrett, supra,* and gives the same reason, that the jury should not take their own knowledge, but base their verdict on the *evidence,* which the Judge in this case told them to do. Exactly the same was held in *Sossaman v. Cruse,* 133 N. C., 472.

In *State v. Green,* 134 N. C., 650, the Court did not hold that the expression "If you believe the evidence" was error (though it said it was open to criticism), except for the fact ·that in that case there were two aspects of the evidence, in one of which, if found by the jury, the defendant was not

145—37

guilty.    In the case now before us there was only one possible aspect, if the evidence was believed, for there was no conflict and only one witness.    The defendant did or did not run its freight train by Franklinton on a Sunday afternoon within two years previously.    The Judge expressed no opinion on the evidence, but simply told the jury, if they believed the evidence of the witness (Ballard), the defendant was guilty; and, "beyond all controversy," the facts testified to by Mr. Ballard were the facts which the statute says constitute a misdemeanor.

In *State v. Riley,* 113 N. C., 648, where the whole subject is fully discussed, the Court said (p. 651) that, in a criminal case, if the testimony is uncontradicted and no inference of intent is to be drawn, the Court can "charge the jury that, if they believe the evidence, the defendant is guilty."    This charge has been upheld in *State v. Railroad,* 119 N. C., 814, above cited, which was an indictment for this offense, and in a very great number of other cases, the point not being head-noted because deemed elementary law.    In *State v. Journigan,* 120 N. C., 569, the Court said that such a charge would be error if "the intent is a material element."    In *State v. Woolard,* 119 N. C., 779, and *State v. Neal,* 120 N. C., 621, the Court held that it was not error to charge that, "if the jury believe the defendant's testimony, he is guilty."    Such instruction as was given in this case is very different from "directing a verdict," which cannot be done in a criminal case, in which the credibility of the evidence must be left to the jury, as was done in this case.    *State v. Riley, supra.*    The three cases cited as criticising, not condemning, this form of charge do not apply, as will be seen by examining them.

In a very recent case (*Clark v. Traction Co.,* 138 N. C., 78) *Brown, J.,* speaking for a unanimous Court, said: "His Honor instructed the jury, if they believed the evidence, to answer the issue 'Yes.'    In this instruction we are *unable to discover any error.*    The evidence in the case was practically

undisputed, and we do not see how any reasonable mind can draw more than one inference from it." That case cannot be differentiated from this. To same effect *State v. Walker, ante,* 567.

The jury have "believed the uncontradicted evidence" that the defendant ran its freight train on that Sunday afternoon. There was no evidence set up in defense to show that the trains were such as were allowed to be run on Sundays. The evidence is that the cars were either "empties" or loaded with lumber and pig iron. Could the jury have possibly "believed *from* the evidence" that the defendant did not illegally run its freight trains on that occasion? If not, how could the omission of the word "from" have affected their finding or be reversible error?